UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael J. Cooper,

              Plaintiff,

v.

Patrick Kelly, in his individual capacity, and Jane Doe, in her individual capacity.

              Defendants.

Case No.

**Complaint**

Jury Trial Demanded
Fed. R. Civ. P. 38(b)

---

For his Complaint, Plaintiff Michael J. Cooper ("Mr. Cooper") states and alleges as follows:

## Introduction

1. This is an action for money damages for the unlawful arrest of and other unlawful conduct directed towards Mr. Cooper, a Black security officer and member of CNN's broadcast team during its coverage of the protests following the May 25, 2020 murder of George P. Floyd, Jr. ("Mr. Floyd"). Patrick Kelly and Jane Doe, employees of the Minnesota State Patrol, violated Mr. Cooper's federal civil rights while acting under color of state law when they unlawfully arrested him on May 30, 2020. Mr. Cooper was part of the same CNN broadcast team as Omar Jimenez ("Mr. Jimenez"), a Black Latino journalist who was also unlawfully arrested on May 29, 2020 while covering the historic protests surrounding Mr. Floyd's murder. The selective arresting of Black media members was not coincidental. It was intentional and racially motivated.

**Parties and Venue**

2. Mr. Cooper is and was at all times material hereto a resident of the State of Illinois. Mr. Cooper identifies as a Black man. He was 64 years old at all times material hereto. Mr. Cooper is an honorably retired, 43-year, law enforcement veteran. Most of Mr. Cooper's career was spent working as a member of the Illinois State Police. He retired in 2005 after a stellar and decorated career.

3. Defendant Trooper Patrick Kelly ("Tpr. Kelly") was, upon information and belief, a resident of Minnesota and a licensed peace officer in the State of Minnesota.

4. Tpr. Kelly was a trooper in the Minnesota State Patrol acting under color of state law at all times material hereto.

5. Defendant Jane Doe ("Captain Doe") was, upon information and belief, a resident of Minnesota and a licensed peace officer in the State of Minnesota.

6. Captain Doe's identify is unknown to Mr. Cooper. However, Mr. Cooper understood Captain Doe to be a captain or other higher-ranking official in the Minnesota State Patrol, acting under color of state law at times material hereto.

7. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourth (as incorporated by the Fourteenth) Amendments to the United States Constitution, and 28 U.S.C. 1331 and 1343(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

**Facts**

8. Mr. Floyd was killed on May 25, 2020 by convicted murderer Derek Chauvin and three other Minneapolis police officers.

9. Following Mr. Floyd's horrific and tragic death, historic protests were held in Minneapolis and across the country, challenging the perpetual and unlawful killing of Black Americans by law enforcement.

10. Shortly after 5:00 a.m. on May 29, 2020, Mr. Jimenez was broadcasting live on CNN when he was arrested by troopers from the Minnesota State Patrol.

11. The troopers arrested and handcuffed Mr. Jimenez despite the fact that he was clearly a member of the media and politely identified himself as such.

12. The troopers arrested Mr. Jimenez but did not arrest nearby white journalists.

13. The arrest of Mr. Jimenez was illegal, widely publicized on May 29, 2020, and condemned by Minnesota officials, including Governor Tim Walz.

14. In response to the protests, Governor Walz issued a series of executive orders implementing curfews for Minneapolis and St. Paul.

15. Executive Order 20-65 imposed the following curfews for Minneapolis and St. Paul:

    a. From 8:00 p.m. on Friday May 29, 2020 until 6:00 am on Saturday, May 30, 2020.

    b. From 8:00 p.m. on Saturday, May 30, 2020 until 6:00 a.m. on Sunday, May 31, 2020.

16. Executive Order 20-65 provided the following exemptions to the curfews:

All law enforcement, fire, medical personnel, **and members of the news media**, as well as other personnel authorized by the City of Minneapolis, City of Saint Paul, Minnesota Department of Public Safety, Minnesota State Patrol, or Minnesota National Guard, are exempt from the curfew. Individuals traveling directly to and from work, seeking emergency care,

fleeing dangerous circumstances, or experiencing homelessness are also exempt.

(emphasis added).

17. Minneapolis Mayor Jacob Frey then issued Emergency Regulation No. 2020-2-1 (Amended) for the City of Minneapolis, which mirrored Executive Order 20-65 curfew requirements and exemptions for May 29, 30, and 31.

18. Once again, "**members of the news media**" were exempted. Emergency Regulation No. 2020-2-1 (Amended) (emphasis in original).

19. Mr. Cooper was dispatched to join the CNN broadcast team ("Broadcast Team") on May 30, 2020 to provide security for the team, in part in response to the unlawful arrest of Mr. Jimenez.

20. Mr. Cooper was an instrumental part of the Broadcast Team, which was engaging in the fundamental constitutional right of providing press coverage of this historic event.

21. When Mr. Cooper joined the team, he was in possession of his current and valid HR 218, which permits qualified law enforcement officers to carry a concealed firearm in any jurisdiction in the United States.

22. Mr. Cooper was lawfully carrying two firearms on May 30, 2020 while serving as a member of the Broadcast Team.

23. Mr. Cooper was also carrying his CNN press credential on May 30, 2020, while serving as a member of the Broadcast Team.

24. As it became dark on the evening of May 30, the Broadcast Team found itself in a dangerous location where the police were shooting tear gas and rubber bullets towards the crowd.

25. Mr. Cooper was charged with navigating the Broadcast Team to a different location to keep the team safe.

26. One of the Broadcast Team's producers was shot by a rubber bullet and fell to the ground in pain.

27. The Broadcast Team encountered a barrage of tear gas.

28. Mr. Cooper eventually identified law enforcement and recommended that they calmly approach law enforcement, present their press credentials, and seek assistance with evacuating the area.

29. Mr. Cooper was the only Black member of the Broadcast Team in the immediate vicinity.

30. Mr. Cooper and a producer calmy approached law enforcement.

31. Upon information and belief, this group of law enforcement officers were State Troopers.

32. Mr. Cooper held his Illinois State Police credentials in the air facing the Troopers as Mr. Cooper and the producer approached.

33. After law enforcement began shouting at the men, Mr. Cooper recommended that the producer stand still while Mr. Cooper approach the officers.

34. Mr. Cooper repeated throughout this encounter that he was press but was ignored.

35. Mr. Cooper was directed to turn around and walk backwards towards them.

36. Mr. Cooper complied.

37. The troopers ordered Mr. Cooper to kneel down, then lay down, and place his arms straight out from his body with his palms facing straight up.

38. Mr. Cooper again complied.

39. Several troopers, including Tpr. Kelly then grabbed Mr. Cooper, knocked his identification from his hand, and cuffed his hands behind his back.

40. Mr. Cooper did not resist the troopers in any fashion and complied with all orders throughout this entire encounter.

41. Mr. Cooper explained that he was retired law enforcement and armed.

42. Tpr. Kelly then forcefully removed Mr. Cooper's two firearms from his body.

43. The troopers left Mr. Cooper handcuffed and prone for several minutes.

44. The troopers did not arrest any of the white members of the Broadcast Team, who initially remained nearby.

45. Mr. Cooper was eventually seated on a bench.

46. He attempted to plead his case to Tpr. Kelly, Captain Doe, and others, explaining that he was a member of the press and retired law enforcement.

47. Captain Doe wrongly proclaimed that Mr. Cooper was in violation of the Governor's curfew, ignoring the press exemption which Mr. Cooper himself explained to her.

48. Mr. Cooper was left to sit handcuffed for at least 45 minutes before Captain Doe instructed Tpr. Kelly to bring Mr. Cooper to the Hennepin County Jail.

49. Captain Doe snidely told Mr. Cooper that they were going to keep him locked up until Tuesday, June 2, 2020.

50. Tpr. Kelly then placed Mr. Cooper into a State Patrol squad, where Mr. Cooper remained handcuffed for approximately 45 more minutes.

51. Mr. Cooper was then transferred to the custody of the Hennepin County's Sheriff's Office for transport to the jail.

52. Tpr. Kelly wrote in his report that the "[c]harges include: Carrying concealed weapon without permit (GM) MN Statute 624.714, and the Curfew Violation put in place by the Mayor of Minneapolis."

53. Mr. Cooper had a permit to lawfully carry and was exempted from the curfew.

54. Mr. Cooper was transported to the Hennepin County Jail, where he was forced to undergo booking/processing.

55. Mr. Cooper was humiliated undergoing this process as a 64-year-old-man, who had dedicated over two-thirds of his life to serving the public in law enforcement.

56. Mr. Cooper was held at the jail for approximately 20 hours before he was released pending complaint.

57. Ultimately, no charges were ever filed, and Mr. Cooper was forced to pursue the expungement process to prevent public access to the information pertaining to his humiliating and unlawful arrest.

58. Despite efforts made on Mr. Cooper's behalf, Mr. Cooper never received so much as an apology or public recognition of this unlawful act by the State Patrol or Minnesota public officials.

59. This experience has caused Mr. Cooper great stress and anxiety – not only due to his own unlawful arrest but because he has now been left to contemplate that the system he has dedicated his life to is capable of unlawfully arresting and causing resulting harm to wholly innocent men and women.

### Count One

**42 U.S.C. § 1983 – Fourth Amendment Violations**
**Unlawful Detention, Arrest, and Excessive Force**
*Plaintiff v. Kelly and Doe*

60. Mr. Cooper realleges all allegations of this Complaint as if fully stated herein.

61. No reasonable officer could have believed that they had reasonable suspicion to detain Mr. Cooper.

62. No reasonable officer could have believed that they had probable cause to arrest Mr. Cooper.

63. By the acts described herein, Tpr. Kelly and Captain Doe violated Mr. Cooper's clearly established and well-settled right to be free from unreasonable seizures and unlawful detention and arrest.

64. No reasonable officer could have believed that they could use **any** force on Mr. Cooper.

65. No reasonable officer could have believed that Mr. Cooper committed a crime, posed a danger to anyone, or that Mr. Cooper was attempting to resist or flee.

66. By the acts described herein, Tpr. Kelly violated Mr. Cooper's clearly established and well-settled right to be free from unreasonable seizures and excessive force.

67. Tpr. Kelly and Captain Doe subjected Mr. Cooper to these deprivations of his rights in such a manner as to render them liable for punitive damages.

68. As a direct and proximate result of the acts of Tpr. Kelly and Captain Doe, Mr. Cooper suffered injury, was forced to endure pain, suffering, humiliation, embarrassment, and emotional distress, and was therefore damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

**Count Two**

**42 U.S.C. § 1983 – First Amendment Violations
Free Speech, Press, and Assembly**
*Plaintiff v. Kelly and Doe*

69. Mr. Cooper realleges all allegations of this Complaint as if fully stated herein.

70. At the time Mr. Cooper was unlawfully detained, arrested, and subjected to force, he was engaged in activity protected by the First Amendment's guarantees of freedom of speech, press, and assembly.

71. The actions taken by Tpr. Kelly and Captain Doe were adverse actions under color of state law that would chill a person of ordinary firmness from continuing to speak, report, and/or assemble.

72. Tpr. Kelly and Captain Doe were motivated, at least in part, to subject Mr. Cooper to these unlawful acts due to his exercise of First Amendment rights.

73. Tpr. Kelly and Captain Doe's conduct towards Mr. Cooper was objectively unreasonable and they had neither reasonable suspicion nor probable cause to engage in the unlawful actions taken towards Mr. Cooper as described herein.

74. Tpr. Kelly and Captain Doe subjected Mr. Cooper to these deprivations of his rights in such a manner as to render them liable for punitive damages.

75. As a direct and proximate result of the acts of Tpr. Kelly and Captain Doe, Mr. Cooper suffered injury, was forced to endure pain, suffering, humiliation, embarrassment, and emotional distress and was therefore damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

76. **Mr. Cooper demands a jury trial.**

WHEREFORE, Plaintiff Michael J. Cooper prays for judgment against Defendants Patrick Kelly and Jane Doe as follows:

1. As to Count One, a money judgment for compensatory damages in an amount in excess of Five Hundred Thousand ($500,000) Dollars and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney fees under 42 U.S.C. § 1988 and prejudgment interest;

2. As to Count Two, a money judgment for compensatory damages in an amount in excess of Five Hundred Thousand ($500,000) Dollars and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney fees under 42 U.S.C. § 1988 and prejudgment interest; and

3. For such other relief as this Court deems just and equitable.

                                            **NEWMARK STORMS DWORAK LLC**

Dated: May 27, 2021              /s/ Jeffrey S. Storms
Jeffrey S. Storms, #387240
Paul C. Dworak, #391070
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
Phone: 612.455.7055
Fax: 612.455.7051
jeff@newmarkstorms.com
paul@newmarkstorms.com

- *and* -

**ROMANUCCI & BLANDIN, LLC**
Ian P. Fallon (*pro hac vice pending*)
(Illinois ARDC No. 6332303)
321 North Clark St., Suite 900
Chicago, Illinois 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
E-mail: ifallon@rblaw.net

- *and* -

**BEN CRUMP LAW, PLLC**
Christopher M. O'Neal (*pro hac vice pending*)
(Florida Bar No. 0910201)
122 S. Calhoun Street
Tallahassee, FL 32301
Tel: (850) 888-4142
Fax: (850) 224-2021
E-mail: chris@bencrump.com